IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

CHRISTOPHER BUCHANAN                                        PLAINTIFF
ADC #176655

V.                              NO. 2:21-cv-13-DPM-ERE

BOBBY MAY, *et al.*                                         DEFENDANTS

<u>RECOMMENDED DISPOSITION</u>

## I.    <u>Procedures for Filing Objections</u>:

This Recommendation for the dismissal of Mr. Buchanan's claims has been
sent to United States District Chief Judge D.P. Marshall Jr. Any party may file
written objections to all or part of this Recommendation. Any objections filed must:
(1) specifically explain the factual and/or legal basis for your objection; and (2) be
received by the Clerk of this Court within 14 days of the date of this
Recommendation. If the parties do not file objections, Judge Marshall can adopt this
Recommendation without independently reviewing all of the evidence in the record.
By not objecting, you may waive the right to appeal questions of fact.

## II.   <u>Introduction</u>:

On January 28, 2022, Plaintiff Christopher Buchanan, an Arkansas Division
of Correction inmate, filed this § 1983 lawsuit *pro se*.  Collectively, Mr. Buchanan's
pleadings (*Docs. 2, 13, 64*) present an assortment of complaints about his pre-trial
detention at the St. Francis Detention Center ("Detention Center"). He sues St.

Francis County Sheriff Bobby May; jail administrator Jonnie Jones; assistant jail administrator Larry Jones; correctional officers Marty Watlington and Greg Gillon; deputy jailers Gordon Quinn Siders and Austin Wilson; and medical provider Darrell Elkin. Mr. Buchanan currently proceeds on claims that: (1) Defendants May, Jonnie Jones, Larry Jones, Watlington, Gillon, Wilson, and Siders failed to protect him from a March 5, 2020 inmate attack; (2) Defendants Wilson and Gillon failed to provide him medical care for injuries he sustained during the attack; and (3) Defendants Elkin, Jonnie Jones, and Larry Jones failed to provide him medical treatment for syphilis. *Docs. 5, 23, 26, 32, 65, 151*.

Pending before the Court are: (1) Mr. Buchannan's first motion for summary judgment (*Doc. 159*); (2) Defendants' combined motion for summary judgment and response in opposition to Mr. Buchanan's motion, supporting brief, and statement of undisputed facts (*Docs. 175, 176. 177*); and (3) Mr. Buchanan's combined second motion for summary judgment and response in opposition to Defendants' motion and statement of undisputed facts. *Doc. 180, 181*. The motions are ripe for review.

For the reasons stated below, Defendants' motion for summary judgment (*Doc. 175*) should be granted. Mr. Buchannan's motions for summary judgment (*Doc. 159, 180*) should be denied.

III.    **Summary Judgment Standard:**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

IV.    **Factual Background:** [1]

A.    **Failure to Protect from Inmate Attack**

On November 8, 2018, Mr. Buchanan was booked into the Detention Center on a capital murder charge. *Doc. 177-2 at 1*. On March 3, 2020, Mr. Buchanan

---

[1] Unless otherwise stated, these background facts are taken from Mr. Buchanan's arrest and booking papers (*Doc. 177-2*), inmate requests and grievances (*Doc. 177-3*), medical file (*Doc. 177-4*), deposition testimony (*Doc. 177-9*), and documents that he submitted in support of his first motion for summary judgment. *Doc. 159*.

submitted his first inmate request form complaining about his safety. *Doc. 177-3 at 3*. He stated, "I am requesting removal of this cell because of constant threats[.] I feel unsafe[,] cannot sleep[,] and[d] would l[i]ke to talk to [J. Jones] or [L. Jones] about this situation asap." *Id*. On March 16, Defendant L. Jones responded to Mr. Buchanan's March 3 inmate request by stating, "Forwarded to [J. Jones]." *Id*.

In deposition, Mr. Buchanan recounted the following events leading up to the March 5 attack. On March 3, 2020, inmates Marchetti Smith, Corliss Fraction, and Mostafah Dosty threw water on him and threatened him. *Doc. 177-9 at 17, 19, 21*. In addition, Smith threatened to "whup" him based on his pending criminal charges, sexual orientation, and STD, and Fractions told him, "[i]f you don't get out of here, we are eventually going to whup you." *Doc. 177-9 at 17-22*. The same day, during cell check, Mr. Buchanan told Defendant Siders that the inmates had threatened him, and he requested to move to another cell. *Id. at 26-27*. Defendant Siders left but later returned and told Mr. Buchanan that Defendant Watlington said that Defendant Jonnie Jones, the jail administrator, would not move him. *Id. at 18, 26*. Later that day, Defendant Watlington visited Mr. Buchanan in his cell to advise him that "he [was] not moving anybody." *Id. at 26*.

Mr. Buchanan also stated in deposition that on March 5, 2022, before inmates Smith, Fraction, and Dosty attacked him, either he or his defense attorney told

Defendant Jonnie Jones that inmates had threatened him.[2] Mr. Buchanan recalls that after either he or his attorney talked to Jonnie Jones, Defendant Austin Wilson came to his cell and told him to pack up his belongings. *Doc. 177-3 at 28-29*. However, over thirty minutes later, Mr. Buchanan had not been moved, and inmates Smith, Fractions, and Dosty attacked him.

On March 5, inmates Smith, Fraction, and Dosty physically attacked Mr. Buchanan. Video footage of the incident shows two inmates pulling Mr. Buchanan from the common area and Mr. Buchanan falling to the ground. *Doc. 177-7*. A few moments later, Mr. Buchanan walked to the other side of the common area, where he and another inmate engaged in a verbal altercation that turned physical. For nearly three minutes, two inmates struck and kicked Mr. Buchanan.[3] Following the assault, Mr. Buchanan stood and walked to the opposite side of the room, bleeding from his nose.

Prior to March 5, Mr. Buchanan had been in the same housing pod with: (1)

---

[2] Mr. Buchanan gave inconsistent testimony regarding communications with Defendant Jonnie Jones. First, he stated that on March 5, 2020, his attorney, Jacqueline Wright, spoke with Jonnie Jones, and soon thereafter, Defendant Wilson told him to pack up his belongings. *Doc. 177-9 at 28*. Later in his deposition, Mr. Buchanan stated that *he* talked directly to Jonnie Jones on March 5, 2020, and she responded, "Okay. I'm going to see what I can do." *Doc. 177-9 at 32*.

In support of his second motion for summary judgment, Mr. Buchanan states that attorney Wright talked to Defendant Jonnie Jones several times, seeking to have Mr. Buchanan transferred to a different jail or cell. *Doc. 180 at 18; Doc. 181 at 1*. However, Mr. Buchanan offers no evidence to support these allegations, nor does he supply any details regarding the alleged conversations, including when they occurred or what was said.

[3] In his second motion for summary judgment, Mr. Buchanan incorrectly states that the attack lasted over 17 minutes. *Doc. 180 at 12*.

inmate Smith for approximately nine days; (2) inmate Fraction for approximately twenty-seven days; and (3) inmate Dosty for approximately fourteen days. *Doc. 177-8 at 3, 6, 9.*

### B.    Inadequate Medical Care for Injuries

Mr. Buchanan reports that as a result of the March 5 attack, he suffered head injuries, a busted lip, a swollen foot, knots on his head and forehead, a swollen eye, knots on his arm, loss of consciousness, and he continues to suffer from anxiety, PTSD, and memory loss. *Doc. 177-9 at 36-37, 45-46, 48.*

Immediately following the incident, Defendant Wilson removed Mr. Buchanan from his cell. *Id. at 36.* Mr. Buchanan contends that he repeatedly told Defendant Wilson that he needed to go to the hospital for emergency treatment, but Defendant Wilson denied his requests and threatened to place him back in the cell with the inmates who had attacked him. *Id.* In addition, Mr. Buchanan alleges that, the following day, he submitted a written medical grievance requesting medical treatment. *Id. at 41.* However, he never received any medical care, nor did Defendant Elkin examine him. *Id.*

### C.    Inadequate Medical Care for Syphilis

In April 2018, prior to Mr. Buchanan's detention, he was tested by the Arkansas Department of Health and diagnosed with syphilis. *Doc. 177-9 at 51-53, 62*; *159 at 48-57.* Mr. Buchanan's symptoms subsided, at least temporarily, after he

received Bicillin injections and antibiotics. *Id*.

When Mr. Buchanan was initially booked into the Detention Center, he recalls telling the intake officer that he had a sexually transmitted disease ("STD") and was scheduled to return to the Arkansas Department of Health for treatment. *Doc. 177-9 at 55*. However, the unidentified officer recorded that he had no medical problems. *Id*.

In deposition, Mr. Buchanan testified that, during the first week of his detention, he verbally told Larry Jones and Jonnie Jones that he needed medical treatment to treat his STD. *Doc. 177-9 at 57*.

A handwritten sick call request dated November 29, 2019, over one year after Mr. Buchanan entered the Detention Center, states: "I am requesting to see Doc about my STD . . .." *Doc. 159 at 19*. The form is not signed by a staff member on the space provided, and it is unclear whether Mr. Buchanan actually submitted the request. In addition, Defendant Elkin states by affidavit that he never received the November 29, 2019 sick call request. *Doc. 177-16 at 1*.

On January 29, 2020, Mr. Buchanan submitted a second sick-call request regarding his need for treatment for an unspecified STD. He stated, in part: "[I] would like to see the doc about getting blood tested for [STD] and [HIV] . . .." *Doc. 177-4 at 13*. Defendant Larry Jones responded to the request with the comment, "forwarded to medical." *Id*. The same day, Defendant Elkin provided Mr. Buchanan

prescriptions for prednisone and amoxicillin. *Doc. 177-4 at 9*. In addition, on February 3, 2020, Defendant Elkin gave Mr. Buchanan a prescription for doxycycline and renewed his prescription for prednisone, and on February 12, Defendant Elkin renewed Mr. Buchanan's prescription for doxycycline and again renewed his prescription for prednisone. *Id*. Medical staff provided Mr. Buchanan doxycycline until March 12, 2020. *Doc. 177-4 at 50*.

On February 17, 2020, Mr. Buchanan filed an inmate request regarding his need to be tested for an unspecified STD. *Doc. 177-3 at 1*. Over a year later, on March 16, 2021, Defendant L. Jones responded by stating "Forwarded to [J. Jones]." *Id*.

On July 20, 2020, Mr. Buchanan submitted a grievance complaining that, when Defendant Elkins came to speak with him, he could not discuss his medical condition because he had "no privacy." *Id. at 19*. Mr. Buchanan requested to meet with the doctor in private regarding his medical concerns. *Id*. The next day, Defendant Larry Jones responded, "Put in a medical request with the same info on it." *Id*.

On August 30, September 12, and September 28, 2020, Mr. Buchanan submitted identical sick-call requests, asking to see a doctor but providing no details regarding a specific medical need. *Doc. 177-4 at 11*. Defendant Larry Jones responded to the September 12 and 28 requests stating, "forwarded to medical," and

he noted the August 30 request had been forwarded to the ADC. *Id*.

On October 23, Mr. Buchanan submitted requests asking to speak privately with Defendant Jonnie Jones about an unspecified "medical situation[.]" *Doc. 177-3 at 22*), and on October 25, he submitted a sick-call request asking to speak privately with "doc." *Doc. 177-4 at 4*. On October 26, Defendant Larry Jones responded to both requests, stating that he had forwarded Mr. Buchanan's requests to medical. *Doc. 177-3 at 23; Doc. 177-4 at 4*.

On November 13, 2020, Mr. Buchanan was transferred to the custody of the ADC. *Doc. 177-2 at 1*. The same day, he was tested for the bacterium associated with syphilis, and two days later, the test results returned positive. *Doc. 159 at 37-38*. Over the next fourteen-day period, ADC medical providers gave Mr. Buchanan three Bicillin injections. *Id. at 36*. Subsequently, Mr. Buchanan's symptoms started "fading away" and additional blood tests returned negative for syphilis. *Doc. 177-9 at 66*. In his June 10, 2022 deposition, Mr. Buchanan reported that he was symptom free. *Id*.

## V.    <u>Analysis:</u>

### A.    **Qualified Immunity – Individual Capacity Claims**

Each Defendant asserts qualified immunity and seeks summary judgment in his or her favor. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). In deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group" and must consider each Defendant's conduct to determine whether evidence against that "*individual officer* [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

### 1.    Failure to Protect

The Eighth Amendment requires prison officials to protect convicted prisoners from violence at the hands of other prisoners, *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), and the Due Process Clause of the Fourteenth Amendment imposes a similar duty on detention center officers to protect pretrial detainees. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (pretrial detainees are entitled to at least the same protection as convicted persons).

To sustain a claim that a defendant violated his right to protection, Mr. Buchanan must present evidence to show that: (1) objectively, he was incarcerated

under conditions posing a substantial risk of serious harm; and (2) subjectively, the defendant was "deliberately indifferent" to that risk. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). "The second requirement is a subjective test; the defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference describes a state of mind "akin to criminal recklessness." *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). "This onerous standard requires a showing 'more than negligence, more even than gross negligence,' but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (quoting *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (first quote) and *Schaub v. VonWald,* 638 F.3d 905, 914–15 (8th Cir. 2011) (second quote)).

Particularly relevant to Mr. Buchanan's claims, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). And an "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838.

11

### a.    Defendants Bobby May and Wilson

Mr. Buchanan acknowledges that he never directly informed Defendants Sheriff Bobby May or Deputy Jailer Austin Wilson, prior to the March 5 attack, that he had been verbally threatened by other inmates. *Doc. 177-9 at 31, 35*. In deposition, he stated that he "assumed" that Defendant May viewed a grievance he submitted via kiosk on March 3, 2020 (*Id. at 31*) and that Defendant Jonnie Jones informed Defendant Wilson that inmates had threatened him. *Id. at 35*. However, Mr. Buchanan fails to present any evidence to support a reasonable inference that Defendant May or Wilson were subjectively aware of or deliberately indifferent to a substantial risk of harm to his safety.[4] Defendants May and Wilson are therefore entitled to qualified immunity on Mr. Buchanan's failure to protect claim.

### b.    Defendant Siders

During the time period at issue, Defendant Siders worked as a deputy jailer at

---

[4]    Mr. Buchanan contends that given his sexual orientation and the high-profile capital murder charge that was pending against him, Defendant May should have automatically segregated him from the general population. *Doc. 180 at 4*. However, an inmate's "general fear for his safety" is insufficient to prove a deliberate indifference claim. See *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (inmate plaintiff failed to demonstrate that defendants acted with deliberate indifference by not placing him in protective custody based on his general fear for his safety).

In addition, to the extent that Mr. Buchannan seeks to hold Defendant May liable based on his supervisory position or his alleged failure to follow Detention Center policy, any such claims fail. Vicarious liability is inapplicable to § 1983 claims. Mr. Buchannan has the burden to show that each defendant, through his or her own conduct, violated his federally protected rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In addition, the law is well settled that failing to follow prison policies or procedures does not rise to the level of a constitutional violation. *McClinton v. Arkansas Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

the Detention Center. By affidavit, he recounts the following events. On March 3, Mr. Buchanan approached him, requested to move to a different cell, and specifically requested to be placed in a juvenile cell.[5] *Doc. 177-10 at 1*. Defendant Siders asked Mr. Buchanan why he wanted to move, but Mr. Buchanan stated only that he did not want to remain where he was housed. *Doc. 177-10 at 1*. According to Defendant Siders, Mr. Buchanan did not: (1) tell him that he had been threatened by other inmates or that he feared for his safety; or (2) appear "upset, fearful, concerned, or alarmed in any way." *Id*. Although Defendant Siders "did not subjectively believe that [Mr. Buchanan] was at a substantial risk of harm," he reported Mr. Buchanan's housing change request to Defendant Watlington. *Id. at 2*. Contrary to Mr. Buchanan's version of events, Defendant Siders states that he did not speak to Mr. Buchanan again regarding his request to move. *Id*.

Over the nighttime hours between March 3 and March 4, Defendant Siders conducted cell checks, and served breakfast to prisoners on March 4. During those times, Mr. Buchanan was sleeping or reading books and "seemed to be fine." *Id*. Defendant Siders' shift ended on March 4 at 7:00 a.m., and he had no further contact with Mr. Buchanan until after the March 5 incident. *Id*.

Even crediting Mr. Buchanan's testimony that he told Defendant Siders on

---

[5] In deposition, Mr. Buchanan stated that he was born on January 15, 1989. Thus, on March 3, 2020, he was thirty-one years old.

March 3 that inmates Smith, Fraction, and Dosty had threatened him, he fails to come forward with any facts showing that Defendant Siders acted with deliberate indifference to his safety.

The Constitution only requires that prison officials take "reasonable measures" to protect prisoners from attacks by other prisoners. *Young v. Selk*, 508 F.3d 868, 871–72 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 832); see also *Prater*, 89 F.3d at 541 (noting that prison officials are not deliberately indifferent to a perceived risk, provided that they respond reasonably to that risk, even if the harm is not ultimately averted). Even assuming that Defendant Siders subjectively believed that Mr. Buchanan's housing assignment posed a risk to his safety, it is undisputed that he took steps to alleviate that risk by notifying Defendant Watlington, a higher-ranking officer, about Mr. Buchanan's request to move. *Doc. 177-9 at 33-34; Doc. 177-10 at 1; Doc. 177-11 at 1.* Furthermore, no risks actually materialized until two days after Defendant Siders notified Defendant Watlington of Mr. Buchanan's request to be transferred and Defendant Siders went off duty. Based on the undisputed evidence, no reasonable fact finder could conclude that Defendant Siders responded unreasonably to a known risk, and he is therefore entitled to qualified immunity on Mr. Buchanan's failure to protect claim

### c.    Defendant Watlington

Defendant Watlington, who serves as a corporal at the Detention Center,

presents his affidavit recalling the following events. *Doc. 177-11*. On March 3, another officer notified Defendant Watlington that Mr. Buchanan wanted to change cells, and he went to Mr. Buchanan's housing pod to speak to him. *Id at 1*. Mr. Buchanan told Defendant Watlington that he and other inmates in the pod "got into it." *Id.* Defendant Watlington believed that Mr. Buchanan was telling him that he and other inmates had a verbal altercation, and he took the following actions. First, he spoke to other inmates in Mr. Buchanan's pod, and they told him that "they would be able to get along." *Id*. Second, he attempted to find another housing pod for Mr. Buchanan, but inmates in "every other pod" threatened physical harm against Mr. Buchanan. *Id*. Finally, when Defendant Watlington returned to Mr. Buchanan's housing pod, he observed Mr. Buchanan "talking and laughing with some of the other inmates in his pod." *Id. at 2*. "Due to [Mr. Buchanan's] mood and behavior, [Defendant Watlington] did not think that he had actually been threatened, or that he was in danger," nor did he believe that Mr. Buchanan "was at a substantial risk of harm." *Id*.

Mr. Buchanan fails to provide any evidence contradicting Defendant Watlington's testimony that: (1) he attempted to move Mr. Buchanan, but inmates in other pods threatened that they would harm him; (2) he spoke with other inmates in Mr. Buchanan's pod to ensure his safety; and (3) he observed Mr. Buchanan

laughing with other inmates in his pod.[6] Such conduct can hardly be described as "criminally reckless." Even assuming that Defendant Watlington acted negligently, or even grossly negligent, by failing to move Mr. Buchanan to another cell, his conduct did not amount to deliberate indifference. Defendant Watlington took reasonable steps to alleviate any risk posed to Mr. Buchanan's safety. Accordingly, Defendant Watlington is entitled to qualified immunity on Mr. Buchanan's failure to protect claim.

### d.    Defendant Larry Jones

During the time period at issue, Defendant Larry Jones served as a sergeant at the Detention Center, and he was responsible for reviewing and responding to inmate grievances. *Doc. 177-12 at 1*. By affidavit, he states that he did not see, prior to inmates attacking Mr. Buchanan on March 5, the grievance that Mr. Buchanan submitted via kiosk on March 3, stating that inmates had threatened him. *Id*. Defendant Larry Jones further states that prior to the March 5 attack, he had no knowledge, through communication with Mr. Buchanan or otherwise, that Mr. Buchanan had been threatened by other inmates on March 3. *Id*. He states: "If an inmate told me that another inmate had threatened physical harm against [him], I would have immediately removed the inmate from the threat." *Id*.

In deposition, Mr. Buchanan testified that prior to March 3, 2020, he told

---

[6] In his statement of facts, Mr. Buchanan denies these allegations. *Doc. 181 at 3*.

Defendant Larry Jones that inmates had threatened him. *Doc. 177-9 at 23*. However, he could not recall the content of his alleged conversations or when they occurred. *Id*. Mr. Buchanan acknowledged that he did not verbally report to Defendant Larry Jones the threats he received from inmates on March 3, but he noted that Defendant Larry Jones responded to his written grievance. *Id. at 32*. However, Defendant Larry Jones testified that he did not see the March 3 grievance until after the inmate altercation on March 5, and it is undisputed that he responded to the grievance on March 16, 2020. *Doc. 177-3 at 3.*

Mr. Buchanan has failed to present evidence that Defendant Larry Jones was aware or had reason to know that he faced a substantial risk of serious harm before the attack occurred. Accordingly, Defendant Larry Jones is entitled to qualified immunity on Mr. Buchanan's failure to protect claim against him.

e.    **Defendant Greg Gillon**

Defendant Greg Gillon is a sergeant at the Detention Center, and it is undisputed that he was not on duty on March 3 or 4, 2020. *Doc. 177-14 at 1*. According to Defendant Gillon's affidavit presented in support of Defendants' motion for summary judgment: (1) Mr. Buchanan did not report any threats to him between March 3 and March 5; and (2) he did not see Mr. Buchanan's March 3 grievance. *Id*.

In his deposition, Mr. Buchanan testified that he told Defendant Gillon about

17

threats he had received from inmates prior to the March 5 incident. However, he could not recall: (1) when he notified Defendant Gillon of the alleged threats; (2) what he told Defendant Gillon about the threats; or (3) how he notified Defendant Gillon about the threats. *Doc. 177-9 at 35*. Furthermore, Mr. Buchanan testified that he did not tell Defendant Gillon about the inmate threats that he received on March 3. *Id. at 36*.

Mr. Buchanan fails to present any evidence that Defendant Gillon was aware or had reason to know that Mr. Buchanan faced a substantial risk of serious harm before the March 5 attack. Defendant Gillon is therefore entitled to qualified immunity on Mr. Buchanan's failure to protect claim.

### f.    Defendant Jonnie Jones

Defendant Johnnie Jones is a lieutenant and jail administrator for the Detention Center. *Doc. 177-1 at 1*. By affidavit, Defendant Jonnie Jones states that she had no knowledge that inmates threatened Mr. Buchanan on March 3, 2020, and Mr. Buchanan did not tell her that he had been threatened or felt unsafe between March 3 and March 5. *Id. at 1-2*.

In his deposition, Mr. Buchanan testified that he told Defendant Jonnie Jones about the alleged threats on March 5, 2022, prior to the attack. *Doc. 177-6 at 32*. He explains that he told Defendant Johnnie Jones that he "was being threatened by these individuals and being threatened to be brutally beaten." *Id*. She responded, "Okay.

18

I'm going to see what I can do." *Id*. He also testified that after he talked to Jonnie Jones and roughly thirty minutes before he was attacked, Defendant Wilson came to his pod and told him to pack his belongings. *Doc. 177-9 at 28-29*.

Accepting Mr. Buchanan's testimony as true, no reasonable fact finder could find that Defendant Jonnie Jones intentionally disregarded a known risk to Mr. Buchanan. Based on Mr. Buchanan's own testimony, Defendant Jonnie Jones acted reasonably in attempting to assist him and transfer him to another cell. Although Mr. Buchanan was not moved to another cell in time to avoid an inmate attack, the failure to move him earlier in the day amounts to negligence at most, not deliberate indifference. Accordingly, Defendant Jonnie Jones is entitled to qualified immunity on Mr. Buchanan's failure to protect claim.

## 2.    Medical Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Constitution.[7] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). Mr. Buchanan "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An

---

[7] During the events at issue, Mr. Buchanan was a pretrial detainee, and his right to adequate medical care was guaranteed under the Due Process Clause of the Fourteenth Amendment. However, the Eighth Circuit has repeatedly "applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." *Vaughn v. Greene Cty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. *Id. at 575*. Instead, deliberate indifference requires culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In addition, disagreement with treatment decisions cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018). An inmate has no right to a particular or requested course of treatment, and a mere difference of opinion over matters of expert medical judgment or the course of treatment does not amount to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact).

Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted).

### a.   Defendants Austin Wilson and Greg Gillon

In deposition, Mr. Buchanan stated that after inmates attacked him on March 5, 2020, he was bleeding from his lips, nose and head, and he could barely walk. *Doc. 177-9 at 37.* He recalled that Defendant Wilson removed him from his cell and repeatedly refused his requests to go to the hospital. In his supplemental complaint, Mr. Buchanan alleged that Defendant Greg Gillon also denied his requests for medical treatment immediately after the attack, but in deposition, he admitted that he never asked Defendant Gillon for medical care. *Id. at 38.*

According to Defendant Wilson's affidavit testimony, the afternoon of March 5, he heard someone beating on a pod door. *Doc. 177-13.* When he opened the door, Mr. Buchanan told him that he had just been involved in a physical altercation with other inmates in his housing pod. *Id. at 1.* Defendant Wilson offered Mr. Buchanan medical attention, which he declined, and Defendant Wilson provided Mr. Buchanan a towel for his bloody nose. *Id.* Defendant Wilson did not observe any bruises or scratches on Mr. Buchanan, and he "did not recognize the necessity of a doctor's attention." *Id. at 2.* When Defendant Wilson checked on Mr. Buchanan later the same day, he showed no "signs of distress" and did not appear to need any medical attention. *Id.*

In his affidavit, Defendant Gillon recalls that after Mr. Buchanan told him and Defendant Wilson that he had been attacked by inmates in his pod, they offered to

call an ambulance, but Mr. Buchanan stated that he did not need medical care and requested a towel for his bloody nose. *Doc. 177-14 at 1*. *Id*. The only injury that Defendant Gillon observed was Mr. Buchanan's bloody nose. *Id. at 2*. He "did not recognize the necessity of a doctor's attention." *Id*.

Even assuming that Mr. Buchanan requested medical treatment from Defendant Wilson immediately following the incident, the undisputed evidence shows that the only visible injury he sustained in the attack was a bloody nose. While the video recording of the incident depicts an aggressive attack, Mr. Buchanan could stand and walk immediately after the incident. Mr. Buchanan reports that in the course of the attack, he sustained head injuries, a busted lip, a swollen foot, knots on his head and forehead, a swollen eye, knots on his arm, and loss of consciousness, and that he continues to suffer from anxiety, PTSD, and memory loss, but he fails to present *any* evidence to support these allegations. Without such evidence, no reasonable fact finder could conclude that either Defendant Wilson or Gillon intentionally disregarded any serious medical need. Therefore, both Defendant Wilson and Defendant Gillon are entitled to qualified immunity on Mr. Buchanan's medical deliberate indifference claims against them.

### b.   Defendant Darrell Elkin

Based on the undisputed medical evidence, Defendant Elkin consistently addressed Mr. Buchanan's medical needs during his incarceration in the Detention

Center. After Mr. Buchanan submitted his January 29, 2020 request to be treated for an unspecified STD, Defendant Elkin prescribed amoxicillin, an antibiotic that may be used to treat bacterial infections associated with STDs, and prednisone, a steroid used to treat inflammation. Five days later, Defendant Elkin prescribed Mr. Buchanan doxycycline, an antibiotic that may be used to treat STDs, and an additional round of prednisone. Mr. Buchanan continued taking prednisone until March 12, 2020.

In deposition, Mr. Buchanan stated that the antibiotics Defendant Elkin prescribed did not relieve his symptoms and that he refused to prescribe Bicillin. *177-9 at 65-66*. By affidavit, Defendant Elkin testified that he examined Mr. Buchanan several times and provided him medical treatment according to his best medical judgment. *Doc. 177-16 at 3*. He states that: (1) Mr. Buchanan never requested Bicillin shots; and (2) after February 2020, Mr. Buchanan failed to notify him that he continued to suffer any further symptoms of any alleged STD. *Id. at 2-3*. Without any knowledge of Mr. Buchanan's specific medical needs, Defendant Elkins could not have intentionally disregarded Mr. Buchanan's need for medical treatment regarding  STD symptoms.

Finally, to the extent that Mr. Buchanan claims that a delay in receiving Bicillin shots amounted to the deprivation of constitutionally-required medical care, his claim fails. "When an inmate claims that a delay in medical care violates the

Eighth Amendment, 'the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay in treatment.'" *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Id*. (quoting *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)). Here, Mr. Buchanan submits no evidence showing that a delay in his receipt of medical care adversely affected his prognosis. See *Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in treating fractured wrist).

Mr. Buchanan has failed to come forward with any evidence from which a factfinder could conclude that Defendant Elkin's conduct was even arguably criminally reckless. At the summary judgment stage, Mr. Buchanan's unsupported assertions that Defendant Elkins was deliberately indifferent are insufficient. "'When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First*

*Nat'l Bank of Wynne*, 11 S.W.3d 531, 539 (2000)). Accordingly, Defendant Elkin is entitled to qualified immunity on Mr. Buchanan's federal claims for medical deliberate indifference.

### c.    Defendants Jonnie Jones and Larry Jones

In their affidavits, Defendants Jonnie Jones and Larry Jones testify that they are not medical professionals, lack the knowledge "to determine a course of treatment for a purported STD," and left medical decisions to the medical judgment of provider Darrell Elkin. *Doc. 177-1 at 2; Doc. 177-12 at 2.* In addition, the Jones Defendants have no recollection that Mr. Buchanan informed them that Defendant Elkin failed to provide him adequate medical care for an STD (*Doc. 177-1 at 2; Doc. 177-12 at 2*), and Mr. Buchanan provides no evidence that he did. *Id*.

The law is settled that prison supervisors, who lack medical expertise, may rely on the treatment decisions made by medically treated personnel. *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042-43 (8th Cir. 2006). Here, no reasonable fact finder could conclude that Defendant Elkin demonstrated deliberate indifference in addressing Mr. Buchanan's medical needs or that Defendants Jonnie Jones and Larry Jones had notice that Mr. Buchannan's medical needs were not being met. Accordingly, Defendants Jonnie Jones and Larry Jones are entitled to qualified immunity on Mr. Buchanan's medical deliberate indifference claim against them.

### B.    Official Capacity Claims

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

Accordingly, Mr. Buchanan's claims against Defendants are the equivalent of claims against St. Francis County. To establish municipal liability, Mr. Buchanan must prove that an official municipal policy or unofficial custom caused the constitutional injury. *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699 (8th Cir. 2016) (internal citations omitted).

Here, Mr. Buchanan has not provided any evidence that any policy or custom caused the alleged violation of his rights. As a result, Defendants are entitled to judgment as a matter of law on Mr. Buchanan's official capacity claims.

## VI.    Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 175*) be GRANTED.

2.    Mr. Buchannan's motions for summary judgment (*Docs. 159, 180*) be DENIED.

3.    Mr. Buchanan's remaining  § 1983 claims, over which the Court has original jurisdiction, be DISMISSED, with prejudice. To the extent that Mr. Buchanan seeks to pursue a negligence or other state law claim, the Court should decline to exercise supplemental jurisdiction and dismiss such claims without

prejudice, pursuant to 28 U.S.C. § 1367(c)(3).[8]

    4.    The Clerk be instructed to close this case.

Dated this 30th day of November, 2022.

 

UNITED STATES MAGISTRATE JUDGE

---

[8] Under this statutory provision, a court may "decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction.".